IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| DAVID CHASE | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. _____ |
| MATTHEW K. WHITE, SCOTT F. HULL, JEFFREY S. BROWN, JAREN C. BREECE, ALAN T. DIGRUTTOLO, JONATHAN SCHMIDT, JOHN B. HATCHER, JR., GREGORY LINDSTROM, PEDRO RIVERA CHAPPARO, JAMES JORDAN, LARRY CAHILL, JR. and OFFICER JOHN DOE, personally and in their individual capacity as officers of the Metropolitan Government of Nashville and Davidson County, Tennessee, Police Department, and THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE; | ) | Previous Case No.: 3:15-cv-00631 JURY OF TWELVE DEMANDED |
| Defendants. | ) | |

COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, David Chase ("Chase) by and through his undersigned counsel, and hereby re-files this Complaint against Defendants MATTHEW K. WHITE, SCOTT F. HULL, JEFFREY S. BROWN, JAREN C. BREECE, ALAN T. DIGRUTTOLO, JONATHAN SCHMIDT, JOHN B. HATCHER, JR., GREGORY LINDSTROM, PEDRO RIVERA CHAPPARO, JAMES JORDAN, LARRY CAHILL, JR. and OFFICER JOHN DOE, personally and in their individual capacity as officers of the Metropolitan

1

Government of Nashville and Davidson County, Tennessee, Police Department, and THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, and states as follows:

## I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is an adult resident of the State of Tennessee.

2. Upon information and belief, all individual defendants are adult residents of Davidson County, Tennessee, and all are and were at all times relevant, employed as police officers with the Metropolitan Government of Nashville and Davidson County, Tennessee Police Department (respectfully and collectively, the "Defendants" or "Officers," and "Metro PD").

3. Defendant The Metropolitan Government of Nashville and Davidson County ("Metro") is a consolidated municipal and county government of the State of Tennessee.

4. This Court has federal question jurisdiction over this cause pursuant to 28 U.S.C. 1331 as this action substantially arises under the Constitution and laws of the United States, including, but not limited to, Amendments IV, V, VI, and XIV of the U.S. Constitution, 42 U.S.C. 1983 and 42 U.S.C. 1988. Pursuant to 28 U.S.C. 1367, this Court may further exercise supplemental jurisdiction over the related causes of action arising under the Constitution and laws of the State of Tennessee and the common law of Tennessee, which claims and causes of action form part of the same case or controversy over which this Court has original

2

jurisdiction pursuant to 28 U.S.C. 1331. Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. 1391, inasmuch as a substantial portion of the transactions and occurrences giving rise to this action occurred in Davidson County, Tennessee, and these Defendants reside and can be found in the Middle District.

## II. FACTUAL BACKGROUND

5. At approximately 4:00 a.m. on Sunday June 8, 2014, Lauren Bull ("Bull") entered the apartment belonging to Chase, located at 2312 Elliston Place in Nashville (the "Chase's Home").

6. Said entry was intentional and without consent, license, or other legal justification.

7. Bull was accompanied by another woman named Kayla Howell.

8. Despite repeated demand by Chase, Bull repeatedly refused to vacate Chase's Home.

9. Ultimately, Bull vacated Chase's Home.

10. She then called 911 and intentionally and falsely reported that Chase had assaulted her.

11. Ms. Howell was present at the time and has since testified at a hearing on May 29, 2015, concerning the facts of the incident and that she never witnessed any assault or other such touching of Bull by Chase.

12. At the time of said incident, Bull was neither a resident of Chase's Home nor were she and Chase in a domestic relationship.

3

13. Shortly thereafter, Officers arrived.

14. Upon information and belief, Bull may have previously known one or more of the responding Officers.

15. Without any investigation or attempt to contact Mr. Chase, one or more of the Officers took Bull to the police station in order to obtain an arrest warrant.

16. At least one Officer then went up to Chase's Home and violently banged on the door, rousing Chase from his bed.

17. The Officer demanded that Chase open the door to his home. However, despite request by Chase, the Officer refused to identify himself, present credentials, or to even show himself to Chase through the peephole.

18. Instead, the Officer threatened and berated Chase in an effort to coerce him to open the door.

19. Not knowing whether the individual banging on his door was indeed a police officer or just some friend or accomplice of Bull's, Chase refused to open the door.

20. Mr. Chase advised the individual (who turned out to be an Officer), that if he was indeed a police officer he needed to obtain and present a proper warrant before Chase would be willing to open the door.

21. Upon information and belief, with the aid and knowledge of certain of the Officers, or through the Officers' recklessness, Bull intentionally and falsely swore out a warrant for Chase's

4

arrest for charges related to domestic assault.

22. Upon information and belief, the Officers knew or were reckless, willful, and/ or malicious in failing to discover that said charges were false and inaccurate.

23. Upon information and belief, in addition to the aforesaid actual knowledge of the falsity of such charges, the Officers witnessed no injury on Bull nor did they witness any part of the alleged incident. Furthermore, they willfully, maliciously, and intentionally or recklessly failed to perform any investigation to corroborate Bull's allegations or to exonerate Mr. Chase, including, but not limited to, photographing Bull, inspecting her cellphone, or attempting to locate any witnesses, including Ms. Howell.

24. Lacking probable cause, and with knowledge that the charges were false or inaccurate, the Officers improperly and unlawfully obtained an arrest warrant for Mr. Chase for misdemeanor domestic assault. Such warrant was based only on the sworn and false testimony of Bull. Upon information and belief, certain of the Officers prepared, in their own words, Bull's sworn statement in support of the arrest warrant.

25. Upon information and belief, the Officers willfully and maliciously obtained the unlawful warrant, rather than just a criminal summons, in retaliation for Chase's refusal to open his door in exercise of his constitutional right to be free of

5

unwarranted searches and seizures and to be secure in his Home. Upon further information and belief, the Officers further obtained the unlawful warrant in an effort to knowingly and intentionally cloak their unlawful actions with color of law. Additionally, upon information and belief, certain of the Officers may have participated for purposes of furthering personal agendas relating to Bull.

26. After having obtained the arrest warrant, certain of the Officers returned to Chase's Home, bringing Bull back with them, at approximately 6 a.m. on that same day, Sunday June 8, 2014.

27. Without request for entry, notice, knock, or announcement, the Officers willfully, maliciously, and criminally kicked in the door to Chase's Home and, with guns drawn, forcibly and violently rousted him from sleep in his bed and handcuffed him on the floor.

28. At that time, one of the Officers shouted at him "Here's your fucking warrant!" or words to similar effect, while slamming a piece of paper down on Chase's kitchen counter.

29. The Officers then arrested and forcibly, willfully, maliciously, and criminally removed Chase from his home, refusing his repeated requests to be able to gather any personal effects, including his cellphone, wallet, keys, and prescription eyeglasses or contacts.

30. The Officers performed no crime scene investigation and did

6

not secure the alleged crime scene or Mr. Chase's Home.

31. Instead, the Officers gave Bull Mr. Chase's house key and left her alone in Mr. Chase's Home immediately after they seized and arrested Mr. Chase. After some time, she apparently left Chase's Home.

32. Chase was released later that morning, June 8, 2014, and returned to his apartment.

33. Unbeknownst to him, Bull had obtained the key to his apartment from the Officers and had returned to Chase's Home again upon receiving notice of his release from Metro.

34. As a result of the Officers' willful, malicious, and criminal acts and omissions, Bull lay in wait in Chase's Home. Again, Defendant Bull's entry was intentional and without consent, license, or other legal justification.

35. When Mr. Chase arrived at home, he again immediately and repeatedly demanded that Bull leave.

36. Bull refused to leave.

37. Instead, Bull physically assaulted Mr. Chase, causing him serious physical injuries, leaving spatters of blood both within and outside Mr. Chase's Home.

38. Bull's assault was without consent or legal provocation or justification.

39. In addition, Bull intentionally damaged Chase's property, including attempting to kick in the door to Chase's bathroom,

7

wherein he had locked himself in an effort to use his cellphone.

40. At the time of the assault, Chase's cellphone was "locked out" due to Bull's repeated unsuccessful efforts to hack into it while she was left alone in Mr. Chase's Home by the Officers. Mr. Chase was unable to call 911.

41. Eventually Bull vacated Chase's Home long enough for Chase to escape her assault.

42. Bull again contacted 911 and intentionally and falsely reported that Chase had assaulted her a second time.

43. Bull again intentionally and falsely swore out a warrant for Chase's arrest for charges related to felony domestic assault, alleging that Chase had choked her until she lost consciousness and had destroyed her cellphone. In fact, none of that occurred.

44. Upon information and belief, with the aid and knowledge of certain of the Officers, or through the Officers' recklessness, Defendant Bull intentionally and falsely swore out a warrant for Chase's arrest for charges related to domestic assault.

45. Upon information and belief, the Officers knew or were reckless in failing to discover that said charges were false and inaccurate.

46. Upon information and belief, in addition to the aforesaid actual knowledge of the falsity of such charges, the Officers witnessed no injury on Bull, nor did they witness any part of the alleged incident. Furthermore, they willfully, intentionally and

8

maliciously, and/ or recklessly failed to perform a reasonable investigation to corroborate Bull's allegations, or to exonerate Mr. Chase, including, but not limited to, photographing Bull, inspecting her cellphone or taking it into custody, testing blood found at the scene, attempting to locate any witnesses, or lawfully searching or securing the scene of the alleged crime.

47. Despite claiming that she had been choked until unconscious and otherwise violently assaulted, Bull declined any medical attention. Additionally, the Officers witnessed no physical injuries to Bull consistent with her charges.

48. Lacking probable cause, and with knowledge that the charges were false or inaccurate, or with at least recklessness and conscious indifference, the Officers willfully, maliciously, improperly and unlawfully obtained one or more arrest warrants for Mr. Chase for felony domestic assault and other serious crimes. Such warrants were again based only on the sworn and false testimony of Bull. Upon information and belief, certain of the Officers prepared, in his own words, Bull's sworn statement in support of the arrest warrants.

49. As a direct and proximate result, Chase was thereafter arrested a second time, on June 9, 2015, after peaceably surrendering.

50. Upon further information and belief, certain of the Officers may have willfully, maliciously, and criminally destroyed, hid,

or concealed evidence of a relationship or communications with Bull, or other evidence material to the allegations.

51. On June 16, 2015, based upon the false charges asserted by Bull and the false and incorrect statements or reports of the Officers, Metro PD's Chief penned a seven page open letter to Judge Higgins. That letter recklessly published false and defamatory statements concerning Mr. Chase, his actions, and the events surrounding his arrests. Metro published said false and defamatory statements concerning Mr. Chase to numerous third-persons, including the press, and the letter was ultimately published in full in the Tennessean as well as other news outlets. The published false and defamatory statements were further circulated throughout national and international news due to Mr. Chase's prominence as a real estate developer previously lauded for securing a prominent development deal in Nashville.

52. Upon information and belief, Defendants published further defamatory and false statements concerning Mr. Chase.

53. Upon information and belief, Defendants published said false and defamatory statements for the purpose of clothing the Officers' unlawful and reckless actions with credibility, and in an effort to negatively influence public opinion against Judge Moreland and Mr. Chase while bolstering Metro PD's reputation for being tough on domestic violence.

54. Upon information and belief, Defendants knew that said

10

statements were false when made, or they were reckless or negligent in failing to ascertain the truth of said statements.

55. As a direct and proximate result of said defamatory and false statements, Chase's reputation and many of his business and personal relationships have been ruined or significantly harmed. Additionally, Mr. Chase has been deprived of his right to a fair and impartial jury in Davidson County, where he was at the time being prosecuted.

56. After the false arrests, Officer Cahill took primary responsibility for investigating the charges against Mr. Chase.

57. Officer Cahill did not interview Bull until June 12, 2014. At that time he took photographs of her neck and eyes and other body parts. His photographs likewise failed to document any evidence of physical injury consistent with Bull's allegations.

58. In addition, at that time, Officer Cahill took photographs of certain images from Bull's cellphone. These images were previously taken by Bull herself and likewise failed to portray any evidence of physical injury consistent with Bull's allegations.

59. Despite taking certain photographs of pictures and screen shots off of Bull's cellphone, Officer Cahill failed to further investigate or secure that cellphone. He further failed to request Bull's previous cellphone from the time of the incident until many months later, after Chase was indicted and much of the

11

information was inaccessible or had been deleted.

60. At no time did Officer Cahill attempt to secure witnesses, including Kayla Howell. Officer Cahill undertook no other investigation between June 12, 2015, and Chase's indictment in October 2014.

61. Officer Cahill's conduct was reckless or intentional, willful, malicious, and criminal. As a direct and proximate result, Chase was and is being falsely and maliciously prosecuted.

62. Mr. Chase had, inter alia, the following clearly established rights at the time of the complained of actions by the Defendants:

    a. the right to be secure in his person and his Home from unreasonable entry, searches, and seizure under the Fourth Amendment;

    b. the right to bodily integrity and to be free from excessive force by law enforcement under the Fourteenth Amendment;

    c. the right not to be deprived of liberty without due process of law under the Fifth Amendment;

    d. the right to exercise his constitutional rights of free speech under the First Amendment and his right to be free from unlawful entry, search, and seizure without retaliation under the Fourth and Fifth Amendment;

12

e. the right to be free from malicious prosecution under the Fourth and Fourteenth Amendments, and

f. The right to a fair and impartial jury under the Sixth Amendment.

63. At all times relevant, the Officers were aware of or should have been aware of said rights.

64. The Officers, acting in concert and under color of law, undertook and did in fact assault and falsely arrest Mr. Chase, and subject him to false and malicious prosecution.

65. Defendants, acting in concert and under color of law, further violated Mr. Chase's constitutional and other protected rights, including his aforesaid rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments, and under 42 U.S.C. 1983 and 1988, and under the Tennessee Constitution and state law.

66. Said actions were taken willfully, intentionally, maliciously, recklessly, or with conscious indifference.

67. In addition, the Officers and other employees of Metro were acting in furtherance of their employment by Metro, so as to give rise to respondeat superior, as may be permitted under law.

68. Upon information and belief, Metro was aware of, or was reckless in not knowing, the falsity of Bull's allegations and approved of or acquiesced to the unlawful actions of the Officers.

69. Upon information and belief, the Officers lacked adequate

Case 3:16-cv-01576   Document 1   Filed 06/30/16   Page 13 of 24 PageID #: 13

training.

70. Metro was, at all times relevant, policymaker for the Metro PD, and in that capacity established policies, procedures, customs, and/or practices for the same.

71. Upon information and belief, Metro developed and maintained policies, procedures, customs, and practices exhibiting deliberate indifference to the constitutional rights of citizens. These policies, procedures, customs and practices proximately caused the violations of Mr. Chase's constitutional and federal rights as set forth herein and in the other claims. These policies, procedures, customs, and practices resulted in a conscious or deliberate choice to follow a course of action, from among various available alternatives.

72. Upon further information and belief, Metro failed to properly train and/or supervise Metro PD's officers and other employees in a manner amounting to its deliberate indifference to the constitutional rights of Mr. Chase and of the public.

73. In light of the duties and responsibilities of those police officers that participate in arrests and preparation of police reports on alleged crimes, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training and

14

supervision is deliberately indifferent to those rights.

74. The deliberately indifferent training and supervision provided by Metro resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Metro and were moving forces in the constitutional and federal violation injuries to Mr. Chase.

75. As a direct and proximate result of all of Defendants' said acts and omissions as aforesaid, Chase has suffered damages to his person, his reputation, his business, and otherwise financially. In addition, Chase has suffered wrongful arrest, imprisonment, detention, prosecution, and embarrassment. Mr. Chase has further suffered special damages including attorneys' fees, expert fees, and costs of defending the false and malicious prosecution.

## COUNT I
### (Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983)
### (General Violation of Mr. Chase's Civil Rights)

76. Mr. Chase hereby reasserts the allegations contained in the preceding paragraphs of his Complaint.

77. In committing the acts complained of herein, Defendants acted under color of state law to deprive Mr. Chase of certain constitutionally protected rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States including, but not limited to:

15

a. The right to be secure in his person and his Home, free from unreasonable entry, searches, and seizure under the Fourth Amendment;

b. The right to bodily integrity and to be free from excessive force by law enforcement under the Fourteenth Amendment;

c. The right not to be deprived of liberty without due process of law under the Fifth Amendment;

d. The right to exercise his constitutional rights of free speech under the First Amendment and his right to be free from unlawful entry, search, and seizure without retaliation under the Fourth and Fifth Amendment;

e. The right to be free from malicious prosecution under the Fourth and Fourteenth Amendments, and The right to a fair and impartial jury under the Sixth Amendment.

78. Defendants violated Mr. Chase's rights as set forth above and other rights that will be proven at trial. In so doing and at all times, Defendants acted under color of state law.

79. As a direct and proximate result of the violation of Mr. Chase's constitutional rights by the Defendants, Mr. Chase suffered general and special damages as alleged in this Complaint and is entitled to relief under 42 U.S.C §1983 and 1988.

80. The conduct of Defendants was willful, malicious, oppressive and/or reckless, or taken with deliberate indifference and was of

such a nature that punitive damages should be imposed on the Defendant Officers in their individual capacities, in an amount commensurate with the wrongful acts alleged herein.

## COUNT II

### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983

### (Failure to Implement Appropriate Policies, Customs and Practices)

81. Mr. Chase hereby reasserts the allegations contained in the preceding paragraphs of his Complaint.

82. Metro implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices.

83. The failure of Metro to adequately train and supervise the Officers amounts to deliberate indifference to the rights of Mr. Chase to be free from violations of his Constitutional and other rights, as aforesaid, and from harm and injury.

84. The failure of Metro to adequately train and supervise the Officers and other employees amounts to deliberate indifference to the constitutional and other rights of Mr. Chase.

85. As a direct and proximate result of this deliberate indifference to Mr. Chase's rights, the Mr. Chase suffered general and special damages as stated herein, and is entitled to relief under 42 U.S.C. §1983 and 1988.

17

Count III

(Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983)

(Use of Excessive Force)

86. Mr. Chase hereby reasserts the allegations contained in the preceding paragraphs of his Complaint.

87. The Defendant, Metro, has adopted policies, procedures, practices or customs within the Metro that allow, among other things, the use of force when other more reasonable and less drastic methods are available.

88. The actions of Defendant Metro amount to deliberate indifference to the rights of Mr. Chase to be free of excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the Constitution of the United States.

89. As a result of the deliberate indifference to Mr. Chase's rights by the Metro, and its agents, servants and employees, Mr. Chase suffered general and special damages as stated herein, and are entitled to relief under 42 U.S.C. §1983 and 1988.

COUNT IV

(Violation of Civil Rights Pursuant to 42 U.S.C. §1983)

(False Arrest and Imprisonment)

90. Mr. Chase hereby reasserts the allegations contained in the preceding paragraphs of his Complaint.

91. In committing the acts complained of herein, the Officers acted under color of state law by falsely arresting, seizing, and

18

detaining Mr. Chase with no basis in fact or law to do so. In violating Mr. Chase's right to be free from false arrest and imprisonment, these Defendants violated Mr. Chase's rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

92. As a direct and proximate result of the violation of Mr. Chase's constitutional right to be free from false arrest by the Defendants, Mr. Chase suffered general and special damages as stated herein, and are entitled to relief under 42 U.S.C. §1983 and 1988.

## COUNT V

## Tennessee Governmental Tort Liability Act Pursuant to T.C.A. §29-20-101/Tennessee Common Law

## (False Arrest and Imprisonment)

93. Mr. Chase hereby reasserts the allegations contained in the preceding paragraphs of his Complaint.

94. Mr. Chase avers that the Defendants breached a duty of care owed to him, so as not to deprive him of his personal liberty, by intentionally restraining or detaining Plaintiffs without probable cause, lawful justification, and due process of law.

95. Mr. Chase avers that the Defendants, without probable cause, willfully, maliciously, and unlawfully seized, detained, restrained, and imprisoned him against his will through use of force for a period of several hours over two occasions.

19

96. Mr. Chase avers that the Defendants are liable to him for false imprisonment.

97. As a direct and proximate result of the willful, malicious and criminal false arrest and imprisonment by the Defendants in their individual capacity, Mr. Chase suffered general and special damages as stated herein.

## COUNT VI

### Tennessee Governmental Tort Liability Act Pursuant to T.C.A. §29-20-101/Tennessee Common Law

### (Assault and Battery)

98. Mr. Chase hereby reasserts the allegations contained in the preceding paragraphs of his Complaint.

99. The Officers knowingly, willfully, intentionally and maliciously, violently assaulted Mr. Chase in his home, placing him in fear of injury and touching him in an offensive and harmful manner without provocation or consent, and other named Defendants were negligently complicit in the Officers acts.

100. Said assault caused Mr. Chase bodily and other damages.

## COUNT VII

### Tennessee Governmental Tort Liability Act

### Pursuant to T.C.A. §29-20-101/Tennessee Common Law

### (Trespass)

101. Chase hereby re-states the preceding allegations of his Complaint.

20

102. The Officers willfully, maliciously, and criminally committed an intentional trespass upon the property of Mr. Chase, as aforesaid.

103. Mr. Chase sustained damages as a direct and proximate result of such trespass.

## Count VIII

### Tennessee Governmental Tort Liability Act Pursuant to T.C.A. §29-20-101/Tennessee Common Law

### (Defamation)

104. Mr. Chase hereby re-states the preceding allegations of his Complaint.

105. Defendants willfully and maliciously published false and defamatory statements concerning Chase, as aforesaid. Said defendants knew such statements were false at the time made or they made such statements with reckless disregard for their truth or with negligence in failing to ascertain the truth of the statement.

106. As a direct and proximate result thereof, Mr. Chase has suffered damages to his reputation, his business, and otherwise financially. In addition, Chase has suffered wrongful arrest, imprisonment, detention, prosecution, and embarrassment.

**COUNT IX**

**Tennessee Governmental Tort Liability Act Pursuant to T.C.A. §29-20-101/Tennessee Common Law**

**(Negligence)**

107. Mr. Chase hereby re-states the preceding allegations of his Complaint.

108. Defendants owed a duty of care to Mr. Chase in connection with their acts and omissions described herein.

109. Defendants negligently, recklessly, knowingly, or intentionally breached said duty of care.

110. As a direct and proximate result thereof, Mr. Chase has suffered general and special damages, including damages to his reputation, his business, and otherwise financially. In addition, Chase has suffered wrongful arrest, imprisonment, detention, prosecution, and embarrassment.

**COUNT X**

**Tennessee Governmental Tort Liability Act Pursuant to T.C.A. §29-20-101/Tennessee Common Law**

**(Negligent Supervision)**

111. Mr. Chase hereby re-states the preceding allegations of his Complaint.

112. Metro negligently directly and indirectly supervised the Officers, and also failed to provide proper framing and outline proper procedure.

113. In committing the aforementioned acts or omissions, Metro

22

negligently breached said duty.

114. As a direct and proximate result, Mr. Chase has been damaged as alleged herein.

## COUNT XI

### Tennessee Governmental Tort Liability Act

### Pursuant to T.C.A. §29-20-101/Tennessee Common Law

### (Civil Conspiracy)

115. Mr. Chase hereby re-states the preceding allegations of his Complaint.

116. The Defendants acted with common design through a concert of action to carry out the aforesaid willful, malicious, criminal, and tortious acts and violations of Mr. Chase's rights.

117. Each Defendant participated in the conspiracy, which conspiracy proximately and actually caused Mr. Chase general and special damages as aforesaid.

## AD DAMNUM

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff, Mr. Chase, prays for the following relief:

    A.    That process issue and that Defendants be required to appear and answer this Complaint within the time prescribed to them by law;

    B.    For judgment in his favor and against Defendants,

23

jointly and severally, in an amount to be proven at trial;

C.  For punitive damages;

D.  For attorneys' fees and costs incurred in this matter, as may be recoverable; and

E.  For a jury of 12 to decide all issues which may be determined by a jury; and

F.  Such other and further relief as this Honorable Court deems just and appropriate.

Respectfully submitted,

John M. Boucher, Jr. (TN BPR# 022446)

713 Market Street, Suite 100

Knoxville, Tennessee 37902

Telephone:        (865) 321-8872

Facsimile:        (865) 321-8875

jmboucherlaw@gmail.com

Attorney for Plaintiff

24