IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DAVID CHASE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 3:16-cv-01576** |
| | ) | **Judge Aleta A. Trauger** |
| MATTHEW K. WHITE, SCOTT F. | ) | |
| HULL, JEFFREY S. BROWN, JAREN | ) | |
| C. BREECE, ALAN T. | ) | |
| DIGRUTTOLO, JONATHAN | ) | |
| SCHMIDT, JOHN B. HATCHER, JR., | ) | |
| GREGORY LINDSTROM, PEDRO | ) | |
| RIVERA CHAPPARO, JAMES | ) | |
| JORDAN, LARRY CAHILL, JR., AND | ) | |
| OFFICER JOE DOE, personally and in | ) | |
| their individual capacity as officers of | ) | |
| the Metropolitan Government of | ) | |
| Nashville and Davidson County, | ) | |
| Tennessee, and THE | ) | |
| METROPOLITAN GOVERNMENT | ) | |
| OF NASHVILLE AND DAVIDSON | ) | |
| COUNTY, TENNESSEE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Before the court are (1) the Motion to Dismiss filed by defendant the Metropolitan

Government of Nashville and Davidson County, Tennessee ("Metro") (Doc. No. 9); (2) the

Motion to Dismiss filed by defendants Scott Hull, Jaren Breece, Alan Digruttolo, Jeffrey

Brown, Larry Cahill, Matthew White, and James Jordan (Doc. No. 12); and (3) the Motion to

Dismiss filed by defendants John B. Hatcher, Jr., Gregory Lindstrom, and Pedro Rivera-

Chapparo (Doc. No. 22). The motions have been fully briefed by all parties and are ripe for

consideration. For the reasons set forth herein, the motions will be granted.

## I.    FACTUAL ALLEGATIONS

For purposes of reviewing the defendants' motions, the court must accept as true the factual allegations in plaintiff David Chase's Complaint, which states in relevant part as follows.

On Sunday, June 8, 2014, at approximately 4:00 a.m., Lauren Bull entered Chase's home without his permission. After repeated demands, Bull finally left Chase's home. She then called 911 and falsely reported that Chase had assaulted her.

Metro police officers, including the individuals named as defendants in this action (collectively, the "police officer defendants"), arrived at Chase's doorstep shortly thereafter. At least one officer "violently banged" on Chase's door, awakening him. (Compl. ¶ 16.) Because the officer refused to identify himself or present his credentials, Chase declined to open the door.

The police officer defendants thereafter "improperly and unlawfully" obtained an arrest warrant for Chase for misdemeanor domestic assault. (Compl. ¶ 24.) Chase alleges that the police officer defendants knew, or recklessly and maliciously failed to discover, that Bull's charges were false, failed to perform any investigation to corroborate Bull's allegations or exonerate Chase, and lacked probable cause to obtain the arrest warrant. Chase alleges "upon information and belief" that the police officer defendants obtained the arrest warrant, rather than simply a criminal summons, in retaliation for his refusal to open the door the first time they pounded on it. (Compl. ¶ 25.)

After obtaining the arrest warrant, "certain of the officers" returned to Chase's home around 6:00 a.m. the same morning to execute it, bringing Bull with them. (Compl. ¶ 26.) Without knocking and requesting entry, the police officer defendants maliciously kicked in

the door and, guns drawn, "forcibly and violently rousted [Chase] from sleep in his bed and handcuffed him on the floor." (Compl. ¶ 27.) The officers then "forcibly, willfully maliciously, and criminally removed Chase from his home," refusing his requests to gather any personal effects. (Compl. ¶ 29.) Instead of securing the premises, they unlawfully gave Chase's house key to Bull and left her alone in Chase's home. Bull left shortly thereafter.

Chase was released later that morning and returned to his home. He did not know at that time that Bull had obtained a key to his home from the officers and that she had been notified of his release by Metro. As a result of receiving such notice, Bull returned to Chase's home, entered illegally, and waited for his return. When Chase entered, he demanded that Bull leave. Bull refused and instead physically assaulted Chase and intentionally damaged his property.

Bull again called 911 and again falsely reported that Chase had assaulted her. She again swore out a warrant for Chase's arrest for charges related to felony domestic assault, falsely reporting that Chase had choked her until she lost consciousness and had destroyed her cell phone. Chase alleges, "upon information and belief," that the police officer defendants knew or recklessly failed to discover that Bull's charges were false and inaccurate. (Compl. ¶ 45.) Lacking probable cause, the police officer defendants nonetheless obtained one or more arrest warrants for Chase for felony domestic assault and other serious charges, based only on Bull's sworn testimony. As a result, Chase was arrested a second time, on June 9, 2014,[1] after peaceably surrendering.

---

[1] The Complaint states that the second arrest occurred on June 9, 2015. Based on the context, the court presumes that the second arrest occurred on June 9, 2014.

Chase alleges that, on June 16, 2014,[2] "based upon the false charges asserted by Bull and the false and incorrect statements or reports of the Officers," the Metro Police Department's Chief of Police, who is not a defendant in this action, "penned a seven page open letter to Judge Higgins.[3] That letter recklessly published false and defamatory statements concerning Mr. Chase, his actions, and the events surrounding his arrest." (Compl. ¶ 51.) Metro published the false and defamatory statements to third parties, including the press, and the letter was ultimately published in the *Tennessean* newspaper and other local, national, and international news outlets, due to Chase's prominence as a real estate developer.

Chase also alleges, "upon information and belief," that "Defendants published further defamatory and false statements" about Chase for the purpose of "clothing the Officers' unlawful and reckless actions with credibility" and "to negatively influence public opinion against . . . Mr. Chase while bolstering Metro [Police Department's] reputation for being tough on domestic violence," even while knowing that the statements were false. (Compl. ¶¶ 52–54.) As a result of the publication of false and defaming statements, Chase's reputation and his business and personal relationships were ruined or significantly harmed, and he was deprived of the right to a fair and impartial jury in Davidson County.

---

[2] The Complaint actually alleges that the letter is dated June 16, 2015, but it is clear from the context that the letter was written in 2014.

[3] The court takes judicial notice that Judge William E. Higgins was then the presiding judge of Metro's General Sessions Court. The letter to which the plaintiff refers complained that another judge of that court had improperly released Chase from custody prior to the expiration of a statutory twelve-hour "cooling off" period following an arrest on domestic violence charges, in violation of Tenn. Code Ann. § 40-11-150(h)(1)–(2). *See* http://www.tennessean.com/story/news/crime/2014/06/17/police-chief-slams-judge-role-assault-fiasco/10682387/ (last visited Dec. 13, 2016).

After Chase's arrest in June 2014, defendant Cahill took primary responsibility for investigating the charges against him. Chase alleges that Cahill's investigation was slow and sloppy and resulted in the loss of evidence that would have quickly exonerated Chase. Chase alleges that Cahill's reckless and malicious conduct directly resulted in Chase's being falsely and maliciously prosecuted.

Chase alleges that Metro was aware of the falsity of Bull's allegations; it approved or acquiesced in the police officer defendants' unlawful actions; it failed to adequately train the police officer defendants; it maintained policies and customs exhibiting deliberate indifference to the rights of citizens; and its actions led to Chase's damages.

Although the Complaint does not allege as much, the court takes judicial notice that the criminal charges against Chase were dismissed on July 1, 2015. (*See Chase v. Funk*, No. 3:16-cv-1579 (M.D. Tenn. June 30, 2016) (the "Companion Case"), Compl. Ex. 2, Doc. No. 1-2.)

Chase asserts claims under 42 U.S.C. § 1983 and state law as follows:

(1) The police officer defendants' actions violated rights protected by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, specifically Chase's rights (1) to be secure in his home and free from unreasonable entry, search, and seizure; (2) to be free from the use of excessive force; (3) not to be deprived of liberty without due process of law; (4) to free speech; (5) to be free from malicious prosecution; and (6) to a fair and impartial jury. (Compl. Count I.)

(2) Metro acted with deliberate indifference to Chase's constitutional rights when it failed to adequately train its police officers and adopted "reckless policies, customs, or practices." (Compl. Count II.)

(3) Metro adopted policies or procedures that improperly allow the use of excessive force when other less drastic methods are available, in deliberate indifference to Chase's rights under the Fourth and Fourteenth Amendments. (Compl. Count III.)

(4) The police officer defendants, acting under color of state law, falsely arrested Chase without probable cause and falsely imprisoned him without due process, in violation of his rights under the Fourth, Fifth, and Fourteenth Amendments and in violation of the Tennessee Governmental Tort Liability Act ("TGTLA") and Tennessee common law. (Compl. Counts IV & V.)

(5) The police officer defendants committed assault and battery and criminal trespass, in violation of state law, when they knowingly and intentionally trespassed upon Chase's property and assaulted him in his own home. (Compl. Counts VI & VII.)

(6) The defendants willfully and maliciously published false and defamatory statements about him. (Compl. Count VIII.)

(7) The police officer defendants negligently breached their duty of care to Chase, and Metro negligently supervised the police officer defendants in the conduct of their duties. (Compl. Counts IX & X.)

(8) The defendants engaged in a civil conspiracy to carry out the "aforesaid willful, malicious, criminal, and tortious acts and violations of Mr. Chase's rights." (Compl. ¶ 116, Count XI.)

## II.    PROCEDURAL HISTORY

On June 5, 2015, plaintiff David Chase instituted a federal lawsuit (the "2015 Lawsuit") by filing a civil rights Complaint ("2015 Complaint") in this court. *See Chase v. White et al.*, No. 3:15-cv-00631 (M.D. Tenn. June 5, 2015, Doc. No. 1). Less than a month

later, Chase filed a Motion for Voluntary Dismissal without prejudice. *Id.* (M.D. Tenn. July 1, 2005) (Doc. No. 5). The court (Haynes, S.J.) granted the motion by Order entered July 2, 2015. *Id.* (Doc. No. 6).

Prior to dismissal, the plaintiff served, or attempted to serve, the 2015 Complaint upon each of the defendants. The returned summonses reflect that "Jason Bo Bo / Legal Dept." or "Jason / Legal Dept." accepted service of process on behalf of Metro (Doc. No. 8), Matthew White (Doc. No. 9), Larry Cahill, Jr. (Doc. No. 10), John B. Hatcher, Jr. (Doc. No. 12), Jaren Breece (Doc. No. 14), Jason Jordan (Doc. No. 15), Gregory Lindstrom (Doc. No. 17), Scott Hull (Doc. No. 18), and Pedro Rivera Chapparo (Doc. No. 19). Mark Longmire executed the summons served on Jeffrey S. Brown. (Doc. No. 13.) The summons served on Alan Digruttolo was signed by a Deputy United States Marshal, who checked the box certifying that he had personally served the defendant on June 30, 2015 at 10:30 a.m. (Doc. No. 16.)

The summons served on Jonathan Schmidt reflects that the server was unable to locate the defendant, as he was no longer employed by Metro. (Doc. No. 11.) The summons served on John Doe was returned unexecuted. (Doc. No. 4.)[4]

On June 30, 2016, the plaintiff initiated the present action by filing a new Complaint in this court. The 2016 Complaint names the same defendants and is identical in all relevant respects to the 2015 Complaint. The defendants thereafter filed their Motions to Dismiss under Rules 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. Nos. 9, 12, 22), for insufficient service of process and for failure to state a claim for which relief may be

---

[4] Jonathan Schmidt and the still unidentified John Doe defendant have not entered an appearance or joined in the motions to dismiss the present action and do not appear to have been served with process in either action.

granted. The plaintiff responded to each motion individually and with a consolidated memorandum (Doc. Nos. 31, 34–37); the defendants filed reply briefs (Doc. Nos. 57–59), and the plaintiff filed surreplies (Doc. Nos. 66–68).

In conjunction with their motions, the police officer defendants submitted Declarations attesting that they were never personally served with the 2015 Complaint and Summons, the Motion for Voluntary Dismissal, or the Order of dismissal. (Doc. Nos. 14–20, 23–25.)

## II.     LEGAL STANDARD

The defendants' motions are brought under Rules 12(b)(5) and (6) of the Federal Rules of Civil Procedure.

### A.     Rule 12(b)(5)

Rule 12(b)(5) authorizes the court to dismiss a complaint for insufficiency of service of process. *Metro. Alloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp. 2d 561, 563 (E.D. Mich. 2006). The party on whose behalf service of process was made has the burden of establishing its validity. *Shires v. Magnavox Co.*, 74 F.R.D. 373, 377 (E.D. Tenn. 1977). In deciding a motion to dismiss under Rule 12(b)(5), the court may refer to record evidence in determining the sufficiency of service. *Thompson v. Kerr*, 555 F. Supp. 1090, 1093 (S.D. Ohio 1982). The court also may consider facts attested to in uncontroverted affidavits in ruling on a Rule 12(b)(5) motion to dismiss. *Shires*, 74 F.R.D. at 376–77.

### B.     Rule 12(b)(6)

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc.*

*v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" but, instead, must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## III. POLICE OFFICER DEFENDANTS' MOTIONS TO DISMISS

Defendants Hull, Breece, Digruttolo, Brown, Cahill, White and Jordan filed a joint Motion to Dismiss (Doc. No. 12); defendants Hatcher, Lindstrom, and Rivera-Chapparo filed a separate joint motion (Doc. No. 22) that adopts and incorporates by reference the arguments made in support of the other officers' motion. The court addresses these motions together.

The police officer defendants seek dismissal of all claims against them under Rules

12(b)(5) and (6) of the Federal Rules of Civil Procedure on the basis that (1) Tennessee's Savings Statute, Tenn. Code Ann. § 28-1-105, does not apply in this case; (2) the Complaint fails to state a claim for which relief may be granted; and (3) the police officer defendants are entitled to qualified immunity.

Initially, the court notes that Rule 12(b)(5) does not apply to the defendants' arguments except tangentially, because the police officer defendants do not seek dismissal based on the insufficiency of service of process in *this* action. Rather, dismissal is premised upon the insufficiency of service of process in the 2015 Lawsuit and the effect of such insufficiency on the applicability of Tennessee's Savings Statute in this case. The court nonetheless finds it appropriate to consider the police officer defendants' Declarations regarding the insufficiency of service of process of the 2015 Complaint in ruling on their motions in this action. *Cf. Markowitz v. Harper*, 197 F. App'x 387 388 (6th Cir. 2006) (considering uncontroverted affidavits in ruling on motion to dismiss refiled lawsuit based on insufficiency of service in original lawsuit).

### A.    Section 1983 and Personal Tort Claims

The police officer defendants argue that all of the plaintiff's § 1983 claims and most of his state law tort claims are time-barred and that Tennessee's Savings Statute, Tenn. Code Ann. § 28-1-105(a), does not apply, because the defendants were never properly served with the 2015 Complaint or the Order of dismissal.

"In addressing the timeliness of a federal constitutional damages action, 'the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so.'" *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) (quoting *Wilson v. Garcia*, 471 U.S. 261, 266–67 (1985)). Thus, section 1983 actions arising

in Tennessee are governed by Tenn. Code Ann. § 28-3-104(a)(1)(B), which establishes a one-year limitations period for "[c]ivil actions . . . brought under the federal civil rights statutes." The plaintiff's state law tort claims for defamation, assault and battery, trespass, and negligence are also governed by a one-year limitations period. *See* Tenn. Code Ann. § 28-3-104(a)(1)(A) (establishing one-year limitations period for "[a]ctions for libel, injuries to the person [and] false imprisonment"); *Swafford v. Memphis Indiv. Practice Ass'n*, No. 02A01-9612-CV-00311, 1998 WL 281935, at *4 (Tenn. Ct. App. June 2, 1998) (applying one-year limitations period to defamation claim); *Strine v. Walton*, 323 S.W.3d 480, 491 (Tenn. Ct. App. 2010) (negligence claim giving rise to personal injury is subject to one-year statute of limitations); *Brown v. Hipshire*, 553 S.W.2d 570 (Tenn. 1977) (applying one year statute of limitation for injuries to the person to defendant's assault and battery counterclaim).[5]

Tennessee law governs "[n]ot only the length of the limitations period, but also 'closely related questions of tolling and application.'" *Harris*, 422 F.3d at 331 (quoting *Garcia*, 471 U.S. at 269). The Sixth Circuit has expressly recognized that state savings statutes are "[a]mong the tolling provisions interrelated with the statute of limitations. *Id.*

Tennessee's Savings Statute provides that

> If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, . . . the plaintiff . . . may commence a new action within one (1) year. . . .

---

[5] The Complaint also purports to state a claim for "civil conspiracy." Conspiracy "requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007). Conspiracy, standing alone, is not actionable where the underlying torts are not actionable. *Id.* at 179–80.

Tenn. Code Ann. 28-1-105(a). The Savings Statute thus may expand the time a plaintiff has to refile a claim, if the original complaint and the new complaint allege substantially the same cause of action. *Foster v. St. Joseph Hosp.*, 158 S.W.3d 418, 422 (Tenn. Ct. App. 2004). The purpose of the statute is to provide a diligent plaintiff a chance to renew a suit if it is dismissed other than by a judgment on the merits. *Turner v. Aldor Co. of Nashville, Inc.*, 827 S.W.2d 318, 321 (Tenn. Ct. App. 1991).

The Tennessee Supreme Court, however, has expressly recognized that the Savings Statute works in concert with Rule 41.01 of the Tennessee Rules of Civil Procedure. *Frye v. Blue Ridge Neuroscience Center., P.C.*, 70 S.W.3d 710, 716 (Tenn. 2002). Rule 41 authorizes the voluntary dismissal of actions prior to adjudication on the merits, but it conditions the right to take a voluntary nonsuit upon the plaintiff's serving a copy of the notice of nonsuit upon all parties and, if a party has not already been served with a summons and complaint, also serving a copy of the complaint on that party. Tenn. R. Civ. P. 41.01(1). Compliance with Rule 41—that is, service of the original complaint and the notice or order of dismissal—is required in order for a plaintiff to invoke the protection of the Savings Statute. *Frye*, 70 S.W.3d at 716. As the Tennessee Supreme Court stated in *Frye*:

> Rule 41.01(1) require[s] service of both the written notice of nonsuit and a copy of the complaint on other parties. Such a requirement helps cure the injustice of a plaintiff filing a complaint and summons . . . and immediately taking a nonsuit. If the saving statute applies, the plaintiff would get the benefit of tolling a statute of limitations without the defendant knowing of any litigation. . . .
>
> [T]he Tennessee saving statute may only "save" a plaintiff's action when the plaintiff has complied with Rule 41.01 by serving the defendant with copies of the Notice of Voluntary Dismissal and the complaint at the time of the nonsuit.

*Id.*

Rule 41 of the Federal Rules of Civil Procedure contains no analogous requirement that the complaint and notice of dismissal first be served on the defendant in a federal lawsuit. The Sixth Circuit has nonetheless recognized that federal litigants in Tennessee may not rely on Tennessee's Savings Statute without also having complied with the rule requiring service of the original complaint and the notice of dismissal in accordance with Rule 41.01, even where the first complaint was also filed in, and voluntarily dismissed from, federal court. *See Markowitz v. Harper*, 197 F. App'x 387, 390 (6th Cir. 2006) (holding that, where both the original and refiled lawsuit were initiated in federal district court, "to save his lawsuit, [the plaintiff] must have 'serve[d] a copy of the Notice of Voluntary Dismissal and the complaint on the [officers] as required by Rule 41.01.'" (quoting *Frye*, 70 S.W.3d. at 711)).

Applying these principles to the case at bar, the court finds that the plaintiff is not entitled to the benefit of the Savings Statute as to the police officer defendants. The actions giving rise to the plaintiff's claims of excessive force, false arrest, false imprisonment, and other "general civil rights" violations all took place in June 2014 and accrued on the date the arrest and use of force occurred. *Fox v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007). The case at bar was not filed until June 30, 2016, more than two years later. The claims are therefore barred by the statute of limitations in Tenn. Code Ann. § 28-3-104(a) unless tolling applies.

The on-line docket for the 2015 Lawsuit reflects that process was issued for each defendant. As set forth above, the summonses were returned executed for each police officer defendant.[6] All but two of them showed that "Jason Bo Bo / Legal Dept." or "Jason / Legal

---

[6] There was no return of service for defendants Jonathan Schmidt and "John Doe." Those defendants have never been served, have never entered an appearance, and are not party to the present Motions to Dismiss.

Dept." signed to accept service. The return of service for Jeffrey Brown was signed by Mark Longmire, and the return of service on Alan Digruttolo attests to personal service on that defendant. Each of the police officer defendants has submitted a Declaration in which each declares, under penalty of perjury, that he "was not properly served with the summons and complaint in the previous case," that "[n]o U.S. Marshal or other process server personally served [him] with the summons and complaint," that the individual who signed the summons was not authorized to accept service of process on that defendant's behalf, and that he never received notice of the plaintiff's Motion for Voluntary Dismissal or the Order dismissing the case. (Doc. Nos. 14–20, 23–25, at ¶¶ 5–7.) The Motion for Voluntary Dismissal of the 2015 Lawsuit does not contain a certificate of service and therefore does not reflect that it was served on any of the defendants.

Rule 4 of both the Tennessee and Federal Rules of Civil Procedure defines effective service, in relevant part, as delivery of a copy of the summons and the complaint to the individual personally; leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or delivering a copy of each to an agent authorized by appointment or by law to receive service of process. *See* Tenn. R. Civ. Pro. 4.04; Fed. R. Civ. P. 4. Service upon an unauthorized agent in the legal office of the individual's place of business is not an authorized means of service. *See Babb v. Bridgestone/Firestone*, 861 F. Supp. 50, 51 (M.D. Tenn. 1993) ("It is well established that individuals may not be served by merely leaving the Complaint and Summons at their place of business, unless an agent receives the documents, as provided in the last sentence of the Rule." (citing 4A Wright & Miller, Federal Practice and Procedure, § 1096, at 74 (1987)). *See also Daly–Murphy v. Winston*, 837 F.2d 348 (9th Cir. 1987) ("Rule 4 has generally been

construed to mean that service at a defendant's place of employment is insufficient."). Based on the uncontroverted Declarations, the court finds that Jason Bo Bo and Mark Longmire were not authorized agents to accept service of process for the individual defendants. Consequently, none of the police officer defendants except, arguably, Digruttolo, was properly served with the 2015 Complaint or summons accompanying it.

As important to the issue before the court, however, is the fact that the plaintiff has produced no evidence whatsoever that any of the defendants, including Digruttolo, received notice of the Motion for Voluntary Dismissal or the Order granting it. In fact, the only evidence before the court demonstrates that they did not receive these documents. Accordingly, the court finds that the Savings Statute does not apply, and the plaintiff's § 1983 and state-law claims premised on events that took place in June 2014 are barred by the one-year statute of limitations at Tenn. Code Ann. § 28-3-104(a)(1)(A) & (B).

### B.     Malicious Prosecution Claim

A malicious prosecution claim under § 1983 and state law does not accrue until the underlying charges have been resolved in the plaintiff's favor. *Heck v. Humphrey*, 512 U.S. 477, 474 (1994); *Fox v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007). Because the criminal charges against Chase were not dismissed until July 1, 2015, this action, filed on June 30, 2016, is timely with respect to the plaintiff's malicious prosecution claim. The police officer defendants acknowledge as much but argue that the claim is subject to dismissal for failure to state a claim for which relief may be granted.

To establish a malicious prosecution claim under Tennessee law, the plaintiff must show that the defendants initiated a lawsuit against him without probable cause; the prior lawsuit or judicial proceeding was brought against the plaintiff with malice; and the prior

lawsuit terminated in the plaintiff's favor. *Himmelfarb v. Allain*, 380 S.W.3d 35, 39 (Tenn. 2012) (citations omitted). To state a § 1983 claim for malicious prosecution in violation of the Fourth Amendment, a plaintiff must allege facts meeting four elements: "(1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015). The actions giving rise to a malicious prosecution claim under state and federal law are thus distinct from those relating to the false arrest and false imprisonment claims. The action is grounded in the decision to prosecute.

While it is true that the prior criminal prosecution was terminated in Chase's favor, the plaintiff has not alleged facts that, if true, would establish the other elements of the malicious prosecution claim under either state or federal law. Chase does not allege that any defendant had a role in any of the events that took place after the plaintiff's alleged false arrest, except for Officer Cahill. Chase does not allege that any defendant, including Cahill, made, influenced, or participated in the decision to prosecute Chase or that they testified, falsely or otherwise, against him at any court proceeding. At most, he alleges that Cahill was negligent in his investigation of the charges against him, but allegations of negligence are insufficient to support a claim for malicious prosecution. *Johnson*, 790 F.3d at 655. *See also Sykes v. Anderson*, 625 F.3d 294, 312 (6th Cir. 2010) (holding that, to demonstrate an officer's participation in the decision to prosecute, plaintiff must show that the officer committed wrongful acts, such as making misrepresentations to the prosecutor or testifying

falsely before the grand jury). The court therefore finds that the Complaint does not allege facts sufficient to state a claim for malicious prosecution under either federal or state law against any of the police officer defendants.

## IV. METRO'S MOTION TO DISMISS

Metro asserts that the Complaint fails to state a claim for municipal liability under 42 U.S.C. § 1983 and that the state law claims under the TGTLA are not preserved by Tennessee's Savings Statute and, therefore, are barred by the statute of limitations.[7]

### A. Section 1983 Municipal Liability Claims

A plaintiff can bring a claim under § 1983 for deprivation "of any rights, privileges, or immunities secured by the Constitution and laws," as a result "of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. A municipality may be liable under § 1983, but only if the plaintiff establishes that (1) the plaintiff was deprived of a

---

[7] Ordinarily, § 1983 claims against a municipality are subject to dismissal if the plaintiff's allegations fail to establish a constitutional violation by the individual officers employed by the municipality. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983."). Here, although the claims against the individual defendants will be dismissed on procedural grounds, the Complaint clearly alleges facts that, if true, could establish a constitutional violation by the police officer defendants, including a violation of the knock-and-announce rule, *see Ingram v. City of Columbus*, 185 F.3d 579, 588 (6th Cir. 1999) ("Under the Fourth Amendment, officers must knock and announce their presence and authority before entering a private residence."), and the use of a disproportionate degree of force in effecting the plaintiff's arrest. *See Miller v. Sanilac Cnty.*, 606 F.3d 240, 252–53 (6th Cir. 2010) (holding that the operative question is not the "extent of the injury inflicted" but "whether an officer subjects a detainee to 'gratuitous violence,'" and finding a disputed issue of fact as to whether the defendant police officer used excessive force where the plaintiff testified that the officer had "spun him around, slammed him against his vehicle, and kicked his feet apart," even though the plaintiff was not injured by the conduct). Consequently, the court must consider the § 1983 claim against Metro, despite having determined that dismissal of the § 1983 claims against the police officer defendants is required.

constitutional right; and (2) the municipality is responsible for that violation. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). For a municipality to be responsible for an alleged constitutional violation, the plaintiff must show that the violation occurred because of a municipal policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents" on a theory of *respondeat superior*. *Id.*

There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance for, or acquiescence in, federal rights violations. *Id.*; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Doe*, 103 F.3d at 507.

In the present case, Chase alleges in Count II that Metro "implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices" (Compl. ¶ 82) and that it failed "to adequately train and supervise" the police officer defendants, which proximately caused the violations of his constitutional rights. (Compl. ¶¶ 83–84.) In Count III, he alleges that Metro "adopted policies, procedures, practices or customs . . . that allow the use of force when other more reasonable and less drastic methods are available." (Compl. ¶ 87.)

### *(1)    Failure to Train and Supervise*

The failure to train municipal employees may serve as the basis for liability under § 1983, but only where the failure to train amounts to deliberate indifference to the rights of

persons with whom the police come into contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Thus, it is only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality that the city can be liable under § 1983. *Id.* at 389.

The plaintiff cannot establish that the Metro employees were unsatisfactorily trained by showing that "an otherwise sound" training program was "negligently administered" or that harm could have been avoided if employees had had "better or more training, sufficient to equip [them] to avoid the particular injury-causing conduct." *Id.* at 390–91. Instead, Chase must demonstrate Metro's failure to equip its police officers with adequate training and supervision in one of two ways. First, he can show "[a] pattern of similar constitutional violations by untrained employees" and Metro's "'continued adherence to an approach that [it] knows or should know has failed to prevent tortious conduct by employees,'" thus establishing "the conscious disregard for the consequences of [its] action—the 'deliberate indifference'—necessary to trigger municipal liability." *Connick v. Thompson*, 563 U.S. 51, 62 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)). *See also Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016) (to prevail on a theory of inadequate training or supervision, the plaintiff must show that the municipal policy was "representative of (1) a clear and persistent pattern of illegal activity, (2) which [the municipality] knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that [the municipal] custom was the cause" of the deprivation of the plaintiff's constitutional rights"). "To establish deliberate indifference, the plaintiff must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *St. John v. Hickey*, 411 F.3d 762, 776 (6th Cir. 2005) (citation omitted).

Alternatively, the plaintiff can establish "a single violation of federal rights, accompanied by a showing that [the defendant] has failed to train its employees to handle recurring situations presenting an obvious potential" for a constitutional violation. *Brown*, 520 U.S. at 409. This second mode of proof is available "in a narrow range of circumstances," where a federal rights violation "may be a highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations." *Id.*

In this case, the allegations in the Complaint regarding training and supervision are so broad and amorphous that it is unclear in what way the training might have been deficient or how deficient training led to the plaintiff's injuries. The allegations do not remotely suggest a history of abuse. Instead, the plaintiff simply alleges that Metro's failure to train and supervise led to the "aforesaid" violations of the plaintiff's constitutional rights (Compl. ¶ 93), presumably the rights enumerated under Count I of the Complaint, including the right to be free from unreasonable search and seizure and the use of excessive force; the right not to be deprived of liberty without due process of law; the right to free speech and the right to be free from malicious prosecution. (*See* Compl. ¶ 77.)

In other words, the Complaint simply asserts that the police officer defendants violated the plaintiff's constitutional rights and that Metro therefore must have acted with deliberate indifference in failing to properly train or supervise them. This type of conclusory pleading, devoid of factual specificity, is not "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Rather, these are precisely the type of "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action" that, as the Supreme Court has recognized, will not permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678–79. For these

reasons, the court finds that the Complaint fails to state a municipal liability claim under §
1983 for failure to train or supervise.

### (2)    *Unconstitutional Policy, Procedure or Custom*

In support of his excessive force claims against both Metro and the police officer
defendants, the plaintiff alleges that:

> the Officers willfully, maliciously, and criminally kicked in the door to
> Chase's Home and, with guns, drawn, forcibly and violently rousted him from
> sleep in his bed and handcuffed him on the floor. . . .
>
> The Officers then arrested and forcibly, willfully, maliciously, and criminally
> removed Chase from his home, refusing his repeated requests to be able to
> gather any personal effects, including his cellphone, wallet, keys, and
> prescription eyeglasses or contacts.

(Compl. ¶¶ 27, 29.) Chase links the police officers' actions to Metro in Count III of the
Complaint: "Metro . . . has adopted policies, procedures, practices or customs . . . that allow .
. . the use of force when other more reasonable and less drastic methods are available. . . .
[Metro's actions] amount to deliberate indifference to the rights of Mr. Chase to be free of
excessive force and unreasonable seizures. . . ." (Compl. ¶¶ 87–88.)

Even though Chase's allegations regarding the use of force are sufficient to state a
claim for violation of his constitutional rights by the police officer defendants (*see* Note 6,
*supra*), the Complaint does not contain any well pleaded allegations as to the existence of
actual policies adopted by Metro, show how such policies are inadequate, or suggest how
these policies might be the "moving force" behind the police officer defendants' violation of
the plaintiff's rights. The Complaint does not identify any other instances in which other
officers were accused of using excessive force to enter a home or subdue an arrestee. As with
the claim based on Metro's inadequate training or supervision, the plaintiff asserts a violation
of his constitutional rights and extrapolates from there to an assumption that Metro must have

adopted a policy that permitted such a violation. The claim amounts to pure speculation and relies upon a conclusory recitation of the elements of the cause of action.

In short, the plaintiff fails to allege actual facts showing deliberate indifference on the part of Metro. The Complaint therefore fails to state a claim against Metro based on the existence of a policy, procedure or custom that caused a violation of the plaintiff's constitutional rights.

### B. State Law Claims under TGTLA

The only remaining claim that is specifically directed toward Metro is a claim of negligent supervision (Count X). The other state law claims are directed toward the individual defendants, and it is unclear whether the plaintiff intends to state *respondeat superior* claims against Metro based on its employees' behavior.

The TGTLA codifies Tennessee's common law rules concerning sovereign immunity and states exceptions to the general grant of immunity from suit. *See Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 79 (Tenn. 2001). Under the statute, the default rule is that, except as otherwise stated within the TGTLA, "[a]ll governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a). The TGTLA contains specific provisions that waive sovereign immunity for identified types of claims, including claims stemming from the "negligent acts or omissions" of public employees acting within the scope of their employment, Tenn. Code Ann. § 29-20-205. Accordingly, the negligent supervision claim against Metro and any *respondeat superior* claim against Metro based on Metro employees' negligence are governed by the TGTLA.

Actions brought under the TGTLA are governed by a one-year statute of limitations. Tenn. Code Ann. § 29-20-305(b). The plaintiff's negligence and negligent supervision claims accrued in June 2014, when his allegedly unlawful arrests occurred. He did not file this lawsuit until June 30, 2016, more than two years later. The claims are therefore barred by the statute of limitations, unless the plaintiff can show that the statute of limitations was tolled.

As previously stated, Tennessee's Savings Statute provides for tolling in some circumstances. It states, in pertinent part, that, where an action is commenced within the statute of limitations but terminated "upon any ground not concluding the plaintiff's right of action," the plaintiff may "commence a new action within one (1) year after the reversal or arrest." Tenn. Code Ann. § 28-1-105(a). The 2015 Complaint was filed on June 5, 2015, within the one-year statute of limitations, and terminated upon the plaintiff's Motion for Voluntary Dismissal on July 2, 2015. The plaintiff initiated this action by refiling an identical Complaint within one year after that date, on June 30, 2016.

However, insofar as the plaintiff intended to rely on the Savings Statute to preserve his TGTLA claim against Metro, such reliance was misguided. The Savings Statute does not apply to claims brought against governmental entities under the TGTLA. *Sutton v. Barnes*, 78 S.W.3d 908, 914 (Tenn. Ct. App. 2002). *See also Williams v. Memphis Light, Gas & Water Div.*, 773 S.W.2d 522, 523 (Tenn. Ct. App. 1988) ("We find that the savings statute cannot be used to extend the period within which to file suit against a governmental entity.").

The plaintiff denies relying on the Savings Statute and appears to argue, based on a completely separate lawsuit also filed in this court,[8] that, because he was coerced into agreeing to the dismissal of the 2015 Complaint in order to secure the dismissal of the criminal charges against him, the court cannot determine on a motion to dismiss whether the

---

[8] *Chase v. Funk*, No. 3:16-cv-01579 (M.D. Tenn. June 30, 2016).

plaintiff's claims were filed within the statute of limitations. (*See* Doc. No. 37, at 6 ("Defendant Metro makes the statement that 'the Savings Statute cannot be relied upon to extend the Statute of Limitations for GTLA claims. However, all of the cases cited are completely distinguished from Mr. Chase's. Not a single case has the facts as alleged in the matter before the Court today. No plaintiff in the [cases] cited by the Defendant was forced to dismiss his original complaint by threats of malicious prosecution and exposed to several years in prison.").)

The plaintiff does not allege any facts in the Complaint in this case regarding the dismissal of the criminal charges against him or the voluntary dismissal of the 2015 Complaint. The court must rule upon the allegations made in the Complaint in *this* case and not upon extraneous argument made in briefing papers. The court therefore finds that the negligence claims against Metro are barred by the one-year statute of limitations.

## V.      CONCLUSION

For the reasons set forth herein, the Motions to Dismiss (Doc. No. 9, 12, and 22) will be granted. Although defendants Jonathan Schmidt and John Doe have not been served and did not join in the Motions to Dismiss, it is clear that the claims against them are subject to dismissal for all the same reasons as the claims against the other police officer defendants. This action will therefore be dismissed in its entirety.

An appropriate order is filed herewith.

ALETA A. TRAUGER
United States District Judge